*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LIVINGSTON COUNTY HOCKEY
ASSOCIATION, INC.,

UNPUBLISHED
May 6, 2021

Petitioner-Appellant,

v

No. 352715
Tax Tribunal
LC No. 18-000021-TT

TOWNSHIP OF GENOA,

Respondent-Appellee.

Before: BORRELLO, P.J., and BECKERING and SWARTZLE, JJ.

SWARTZLE, J. (*concurring*).

I respectfully concur in the result only. I disagree with the majority that this case is materially distinguishable from this Court's prior decision in *Chelsea Health and Wellness Foundation v Township of Scio*, unpublished per curiam opinion of the Court of Appeals, issued Oct. 12, 2017 (Docket No. 332483). As the majority points out, the Foundation's activities in *Chelsea Health and Wellness Foundation* focus on physical activity, nutrition, and other miscellaneous health-and-wellness matters. *Id.* at 2-3. The Foundation charges a monthly fee for individual memberships, and it offers "scholarship options" in limited circumstances, *id.* at 3 (though these "scholarships" seem indistinguishable from common membership discounts offered by traditional gyms that are based on a person's financial status or "your first 2 months FREE!"-type promotions).

Although not on the same scale or scope, petitioner offers activities and benefits analogous to those of the exercise facility described in *Chelsea Health and Wellness Foundation*. Petitioner is a non-profit in good-standing, and thus it does not make a profit from either the fees it charges or any other source of revenue. The parties stipulated that, through activities offered in its facility, petitioner has helped persons build endurance, gain physical agility, improve balance and joint flexibility, manage and maintain a healthy weight, and build self-confidence. The parties also stipulated that skating and playing hockey improve a person's mental fitness and relieve stress, and anyone who has spent any significant time on a treadmill or elliptical machine likely suspects that petitioner has the upper hand in these areas compared to those in *Chelsea Health and Wellness*

-1-

*Foundation.* Both petitioner's skating facility and the Foundation's exercise facility in *Chelsea Health and Wellness Foundation* offer various ancillary services, but the primary activities of both are undeniably physical exercise and personal wellness.

For these reasons, as well as others spelled out in more detail by petitioner in its appellate briefs, petitioner's activities are similar in-kind, if not in scale or scope, as those of the Foundation in *Chelsea Health and Wellness Foundation*. I am not aware of any "scale or scope" requirement that would be relevant here, and, accordingly, if *Chelsea Health and Wellness Foundation* had been a published decision (and therefore binding on this panel under MCR 7.215(C)) or was otherwise persuasive, then petitioner would have been entitled to a tax exemption under MCL 211.7o(1), and I would have written a dissent, rather than a concurrence. But *Chelsea Health and Wellness Foundation* is neither published nor persuasive.[1]

My fundamental problem with *Chelsea Health and Wellness Foundation* is that providing physical exercise and personal wellness facilities to members is not a burden of state government for which a charitable tax exemption is appropriate. Whether a person decides to engage in physical exercise (or not) has no relation to any proper burden of state government. Our state government is not coextensive with the source of its authority—the persons who, in their aggregate, make up The People of the State of Michigan. Rather, our state government is, in an important sense, merely an organization (albeit a vital one, subdivided in many ways) that has been delegated certain collective responsibilities by the people of Michigan. There are many types of burdens that fall on communities, groups, families, and individual persons for which a state department or bureau has no relevance or role. And one of the burdens that falls squarely on an individual person is whether that person will engage in a physical activity for exercise.

Our Constitution does make "public health and general welfare of the people of the state . . . matters of primary public concern." Const 1963, art 4, § 51. This provision, however, is properly understood to focus on the *public* health and *general* welfare of the people, i.e., health risks and benefits that exist at some relevant population level. For example, coordinating the distribution of vaccines across the state during a pandemic would certainly fall within this category. Another example would be providing physical education in our public schools. See MCL 380.1502. This constitutional provision is broadly worded and therefore should be broadly understood. But broadly does not mean boundlessly. See *City of Gaylord v Beckett*, 378 Mich 273, 295; 144 NW2d 460 (1966).

---

[1] I have sat on several panels involving aspects of *Chelsea Health and Wellness Foundation*, but under law-of-the-case principles, the question about the appropriateness of the charitable tax-exemption to the Foundation itself was never presented. See *Power Wellness Mgt, LLC v City of Dexter*, unpublished per curiam opinion of the Court of Appeals, issued Mar. 4, 2021 (Docket No. 352226); *City of Dexter v Power Wellness Mgt, LLC*, unpublished per curiam opinion of the Court of Appeals, issued Mar. 4, 2021 (Docket No. 349793); *City of Dexter v Chelsea Health & Wellness Foundation*, unpublished per curiam opinion of the Court of Appeals, issued Dec. 20, 2018 (Docket No. 342364).

One could rejoin that if a person does not exercise, then that person might not be as healthy as the person could otherwise be, which might then increase the risk of an unhealthy outcome for that person, which might then increase healthcare costs incurred by that person, which might then be passed along to taxpayers under certain circumstances. See *Chelsea Health and Wellness Foundation*, unpub op at 11-12. This is a rather attenuated line of reasoning to justify imposing a burden on state government that it must then address in some fashion, through tax breaks or otherwise. Moreover, there is no limiting principle to this line of reasoning—*anything* that impacts a person's health in any way, shape, or form would, under this logic, impose a burden on government that would then need to be addressed by it. We should all be quite wary of a government that accepts the burden as to whether and to what extent a person exercises or follows a diet.

This does not, of course, mean that exercise facilities can never receive a tax exemption. Our Legislature has the authority to provide tax exemptions associated with all kinds of different activities, Const 1963, art 9, and, like any other interest group, exercise facilities could organize and petition the Legislature for a tax exemption, Const 1963, art 1, § 3. Whether this does or does not make sound tax policy would then be open to public debate in the body where such debates are supposed to take place, the Legislature. Const 1963, art 4, §§ 1, 20, 32. But what an exercise facility should not be able to do is gain a tax exemption as a charity because it is deemed by a court to be lessening a burden of state government—it is not, in fact, lessening any burden of state government, properly understood.

Accordingly, I agree with the majority that petitioner is not a charitable institution for purposes of MCL 211.7o(1), but I disagree with its conclusion that this case is materially distinguishable from *Chelsea Health and Wellness Foundation*. For this reason, I respectfully concur in the result only.

/s/ Brock A. Swartzle